Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ELITE INFRASTRUCTURE, LLC | § | CASE 20-31384-11 |
| | § | |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF ELITE INFRASTRUCTURE, LLC PURSUANT TO SECTION 1190**
**OF THE BANKRUPTCY CODE DATED AUGUST 7, 2020**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Elite Infrastructure, Inc., ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on May 8, 2020. The Debtor operates a company providing construction services primarily in the Oil & Gas Industry. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the unsecured creditors of Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V").    Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

### Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  As set forth above,  a Subchapter V Chapter 11  does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code.  Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**.  Claimants in Class 1 and 6 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Classes**.  The Class 2 through 5 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 5.  Each holder of an Allowed Claim in Classes 2 through 5 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas  75251.  In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation.  It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing.  Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms.  Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

  3. "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

  4. "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

  5. "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

  6. "**Case**" shall mean this Chapter 11 case.

  7. "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

  8. "**Claimant**" shall mean the holder of a Claim.

  9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

  10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

  11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

  12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtor.

15. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. **"Debtor"** shall mean Elite Infrastructure, LLC.

17. **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee.

18. **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19. **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, May 8, 2020.

24. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.     "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.     "**Sub-Chapter V Trustee**" shall be that person appointed under 11 U.S.C. §1183.

30.     "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31.     "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32.     "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.


III
REPRESENTATIONS


NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN.  THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN.  ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN

**ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTORS

#### Financial History and Background of the Debtor

Elite Infrastructure started in March 2017. Its first customer built a 40,000 barrel a day facility that would change the layout of how the customer did business. Before that facility, most of the industry built smaller facilities that were nearly the same cost, but only handled half of the volume. The initial facility worked so well Elite's customer contracted with Elite to build its next eight facilities. During this time, Elite Infrastructure ran each of these projects as "Project Management" billing model. The vendors would bill the customer direct, and Elite Infrastructure would receive a percentage of revenue based on the billing by the vendors. This model worked well with the first few customers. Cash flow was great, and there was no debt. However, in late 2018 this model had to change to meet new customers demands. Many customers did not have nor wanted the responsibility of paying hundreds of invoices.

In 2018 Elite completed its first "Turn Key" bid to build a Salt Water Disposal in Oklahoma.

This took setting up new accounts, and the addition of debt something Elite previously did not have. Elite continued to grow, completing sites in New Mexico, Texas, Oklahoma, and North Dakota. Through April 2020 Elite Infrastructure had constructed twenty-four facilities, for a total construction value of over $94,000,000 in just three years.

In late 2019 Elite had its first experience with a customer who refused to pay its final draw. This was exacerbated by another customer shortly thereafter not paying. With tight margins to begin with, the non-payment affected Elite's cashflow. In March 2020, the price of Oil hit an unprecedented record low, bringing the oil and gas industry to a near stop. With this crash in oil price, compounded by a global pandemic, payments nearly ceased to come into Elite. Any previously agreed to new construction was put on hold by customers. With no cash coming in, Elite was left with little choice but to file for bankruptcy to help protect both customers and vendors. In the midst of this, liens have been placed on properties to ensure payment at some point in time, with hopes that as the market recovers payment will be made.

Elite Infrastructure is hopeful that with its resume of building, automating, and proving the amount of liquid that can be moved throughout the system that it will be able to make a strong come back.

### Future Income and Expenses Under the Plan

The Debtor filed this case on May 8, 2020 with the goal of returning to complete operations and proposing a repayment plan. The COVID-19 pandemic has delayed many of the projects the Debtor had anticipated would commence during the bankruptcy process. As set forth above, certain customers have not paid the Debtor. The Debtor is pursuing its rights against those customers including actions to foreclose the Debtor's lien rights. Attached hereto as Exhibit "**A**" are projections of gross income, expenses and operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Eric Benavides. Mr Bevavides will remain the president and owner of the company going forward. Mr Benavides will receive an annual salary of $120,000.

### ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a company that provides large scale infrastructure construction mainly in the oil & gas industry. The Debtor had approximately $ 1,950,000 in accounts receivable as of the

Petition Date, however, many of these funds are currently tied up in litigation. The Debtor owns some office furniture and equipment. The Debtor also maintains cash from loans received as part of the CARES Act.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

## ARTICLE VI
## SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 6 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Comptroller Tax Creditor)** are impaired and shall be satisfied as follows: The Debtor may owe the Comptroller of Public Accounts taxes in the amount of $10,774. To the extent these taxes are owed, the Debtor shall pay them in 24 equal monthly payments commencing on the Effective Date with interest at the rate of 5.75% per annum.
    A failure by the Debtor or Reorganized Debtor to make a payment to the Comptroller pursuant to these terms shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to the Comptroller within ten (10) days after service of a written notice of default, then the Comptroller may (a) enforce the entire amount of its Claim; (b) exercise any and

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED AUGUST 7, 2020 - Page 9**

Case 20-31384-hdh11 Doc 53 Filed 08/07/20 Entered 08/07/20 08:11:23 Page 10 of 14

all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. Debtor shall be allowed to cure up to two (2) defaults. Upon the third default, the Comptroller may declare the default non-curable and proceed to collect the remainder of the debt.

The Class 2 Creditors are impaired under this Plan.

**Class 3 Claimant**. **(Allowed Secured Claims of Valiant Financial Services)** are impaired and shall be satisfied as follows: On or about June 27, 2019, the Debtor and Sparten Manufacturing LLC executed that certain Equipment Lease Agreement ("Agreement") with Valiant Financial Services ("Valiant") for the purchase of that certain 2014 Nissan CF80LP s/n CUG1F29RI250 ("Forklift"). Valient perfected is security interest in the Forklift by filing that certain UCC-1 Financing Statement document number 190026119675.Valiant has filed a Secured Proof of Claim in the amount of $16,600. The Debtor shall pay Valiant under the terms of the Agreement except the payments shall commence on the Effective Date and any payments missed before or during the bankruptcy shall be added to the terms of the original Agreement.

Valiant shall retain its liens on the Agreement until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, Valiant shall be entitled to immediate possession of the collateral associated with the Agreement in default without further Order of this Court.

The Class 3 Creditor is impaired under this Plan.

**Class 4 Claimants (Allowed Secured Claims of BJ Services, LLC, Knight Oil Tools, LLC, Ensign US Southern Drilling, LLC and KBK Industries, LLC**) are impaired and shall be satisfied as follows: BJ Services, LLC, Knight Oil Tools, LLC, Ensign US Southern Drilling, LLC and KBK Industries, LLC (collectively "Secured Creditors") have each filed Lien Claim Affidavits asserting a secured claim against the Lone Ranger SWD Well No 1 API 42-317-42648 ( the "Well"). Pursuant to the terms of this Plan, the Secured Creditors shall be paid in accordance of their respective priority against the Well. The Debtor does not take a position as to the validity and priority of the Class 4 Claimant liens against the Well. In the even the lien claims against the Well are insufficient to pay the Class 4 Claimants, the Class 4 Claimants shall be treated as Class 5 Claimants. The Class 4 Claimant will be required to fully exhaust their rights against the Well before participating as a Class 5 creditor.

The Class 4 Creditors are impaired under this Plan.

**Class 5 Claimants (Allowed Unsecured Claims**) are impaired and shall be satisfied as follows: All unsecured creditors, including those Class 4 unpaid creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED AUGUST 7, 2020 - Page 10**

after the Effective Date of $25,000 into the unsecured creditors' pool. The Debtor shall make distributions to the Class 5 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make a total of 60 payments into the unsecured creditors pool. Based upon the Debtor schedules the Class 5 creditors will receive 50% of their Allowed Claims under this Plan.

The Class 5 creditors are impaired.

**Class 6 (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan, however, they will be allowed to retain their ownership in the Debtor.

Class 6 Claimants are not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets

of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $10,000 in tax claims and approximately $15,000 in administrative claims. Claims to the administrative creditors and the tax creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $3,000,000. The Debtor has no hard assets other than funds in the bank, the accounts receivable and some office furniture. Tax creditors and Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to Reorganized Debtor at 469-782-9250. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: August 7, 2020.

Respectfully submitted,

Elite Infrastructure LLC

  /s/ Eric Benavides
By: Eric Benavides
Its: Managing Member

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS |  |  |
| Cash |  |  |
| Office Furniture | 10,000 | 10,000 |
| Equipment | 20,000 | 40,000 |
| A/R | Unk[1] | 1,900,000[2] |
|  |  |  |
| LIABILITIES |  |  |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAX CREDITORS | 30,000 | 30,000 |
| UNSECURED CREDITORS | 3,000,000 | 3,000,000 |
|  |  |  |
| DISTRIBUTION TO UNSECURED | 0% | 50% |

---

[1] Currently more than $1,000,000 of the Debtor's accountant are involved in litigation. In the event of a Chapter 7 the Debtor is unable to estimate whether any of these would be collectable.

[2] The Debtor is currently pursuing litigation on a number of accounts receivable. The Debtor believe eventually it will be paid on the majority of its accounts.